IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PACIFIC INDEMNITY COMPANY )<br>15 Mountain View Road )<br>Warren, NJ 07061-1615 )<br>)<br>     Plaintiff, )<br>)<br>  v. )<br>)<br>ALFRED KEMP, Individually and d/b/a )<br>KEMP PLUMBING )<br>P.O. Box 1322 )<br>Pembroke, MA 02359 )<br>)<br>   and )<br>)<br>MARTIN SANDBORG, Individually and d/b/a )<br>SANDBORG PLUMBING AND HEATING )<br>13 Liberty Street )<br>Sandwich, MA 02563, )<br>)<br>     Defendants. )<br>             ) | C.A. No.: 04-11975-RWZ |

### DEFENDANT'S, ALFRED KEMP, INDIVIDUALLY AND D/B/A KEMP PLUMBING, REVISED OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY FROM DEFENDANT KEMP'S EXPERTS QUINN HORN AND TIMOTHY MYERS WITH REQUEST FOR ORAL ARGUMENT

Now comes the defendant, Alfred Kemp, individually d/b/a Kemp Plumbing, and opposes Plaintiff's Motion in Limine to Exclude Certain Testimony From Defendant Kemp's Experts Quinn Horn and Timothy Myers.

**Background**

As grounds therefore, Kemp states that it is easy to understand the frustration facing plaintiff, and by extension its counsel, in this case. Pacific Indemnity Company

paid out $2,111,113 as a result of the fire at the Marino carriage house. (Plaintiff's Rule 26(a)(1) Initial Disclosure.) That fire occurred while the carriage house was undergoing renovations and it would be reasonable for Pacific Indemnity to assume that a contractor would be responsible for the fire and that Pacific Indemnity would recover some, if not all, of what it had paid out. To insure its subrogation interests were protected, Pacific Indemnity hired a local fire investigator, Thomas Klem, and had him on the scene of the fire within three days. (Report of Thomas Klem dated July 29, 2005 at 5, attached to the Affidavit of John J. Ryan, Jr. ("Ryan Affidavit") at Exhibit A.) Contrary to all of the sworn testimony in the case, Mr. Klem has concluded that Al Kemp was soldering in the cabinet under the sink in the carriage house late in the day on Thursday, December 19, 2002, some ten or more hours prior to the discovery of the fire. Mr. Klem has further concluded, contrary to the sworn testimony in the case, that Al Kemp had shut the water to the carriage house off on the afternoon of Thursday, December 19, 2002 in order to do his soldering work and that the water to the carriage house was off at the time the fire started. (Report of Thomas Klem dated July 29, 2005, at 17-21, attached hereto as Exhibit A and Report of Thomas Klem dated March 23, 2006, at 14-15, attached hereto as Exhibit B to Ryan Affidavit.)

Unfortunately, and as will be discussed in more detail below, the opinions reached by Mr. Klem are not supported by any sworn testimony from any witness in the case. In fact, the opinions are contradicted by all of those with any knowledge of Al Kemp's activities on Thursday, December 19, 2002. Those opinions are further contradicted by those with any knowledge of the physical condition of the water system for the carriage house at the time of the fire. This results in counsel for Pacific Indemnity having to

2

support the argument set forth in his brief with such statements as are contained on page 9 of his Memorandum of Law: "Predictably, Kemp says that he did not shut off the water. But, just as Kemp could plausibly have lied about using his torch on the afternoon of December 19 in order to attempt to avoid becoming implicated in a $2 million fire, Kemp could, with equal plausibility, have lied about turning the water off in order to use his torch." Plaintiff's experts and now plaintiff's counsel have resorted to calling Al Kemp and all of the other witnesses in the case liars in order to attempt to advance their claim.

On the other hand, Mr. Kemp's fire cause and origin expert, Timothy J. Myers, Ph.D., states that the cause of the fire cannot be determined based on information currently available; that a region near the south end of the kitchen is a possible area of origin although the fire could have started in adjacent areas of the building; that the fire did not originate under the sink or in the wall behind the sink as alleged by Mr. Klem; that Mr. Kemp did not perform soldering in the kitchen on the afternoon before the fire; that at the time of the fire all of the joints of the water piping were intact, water was turned on in the carriage house, and the water piping under the sink was pressurized; and two soldered joints became disconnected due to the heat of the fire and lowering of the soldering melting temperature due to contact with lead in the leaded-brass components. (Report of Timothy Myers dated March 7, 2006, at 40, attached hereto as <u>Exhibit C</u> to Ryan Affidavit.) Mr. Kemp's metallurgy expert, Quinn C. Horn, Ph.D., states in his report that at the time the fire began all joints of the water piping were intact; the heat from the fire was sufficient to melt the solder at the copper/brass interface, but not at the copper/copper soldered joints; that the pressure within the water line provided sufficient

3

force to separate the joint between the copper tube and the brass valve when the solder melted; and the separation of the joint between the copper tube and the brass compression fitting followed. (Report of Quinn Horn dated March 7, 2006, at 38, attached hereto as Exhibit D to Ryan Affidavit.)

With respect to the witness testimony in the case, Al Kemp has stated numerous times that he did soldering work under the kitchen sink in the Marino carriage house on Wednesday, December 18, 2002, turned the water in the carriage house on at that time and pressurized all of the pipes in order to test his soldered connections, and left the water in the carriage house on at the end of the day. He did not turn it off again on Thursday, December 19, 2002, and did no soldering in the carriage house on Thursday, December 19, 2002. (Kemp Depo., attached hereto as Exhibit E to Ryan Affidavit at 45, 61,-63, 65, 77, 81.) Kraig Magnussen, the contractor employed by Roger Marino to oversee all of the various subcontractors involved in the renovation of the main house and the carriage house on the Marino property, testified that Al Kemp always soldered properly and he never saw Al Kemp burn any cabinet he had been soldering in. (Magnussen Depo. attached hereto as Exhibit F to Ryan Affidavit at 99.) Magnussen further testified that although he recalled Al Kemp soldering under the kitchen sink on Wednesday, December 18, 2002, he never saw him doing any soldering on Thursday, December 19, 2002. (Magnussen Depo. attached as Exhibit F to Ryan Affidavit at 116, 148, 149.) Magnussen further testified that he believed the water in the carriage house was on on Thursday, December 19, 2002. (Magnussen Depo. attached hereto as Exhibit F to Ryan Affidavit, at 111,115.) Marty Sandborg, the plumber for the Marino renovation project for whom Al Kemp was working, testified that the water in the

4

carriage house was on and pressurized at the time the fire started in the carriage house on Friday, December 20, 2002. (Sandborg Depo., attached as <u>Exhibit G</u> to Ryan Affidavit at 73-74.) Stephen Driscoll, a plumbing friend of Al Kemp who stopped by the Marino carriage house late in the afternoon of Thursday, December 19, 2002, testified that he checked the water in the carriage house at that time and found that it was on and pressurized. (Driscoll Depo., attached as <u>Exhibit H</u> to Ryan Affidavit, at 32.) There are no witnesses in the case who have testified that they saw Al Kemp using a soldering torch at any time during the day on Thursday, December 19, 2002. There are no witnesses in the case who have testified that the joints of all the water piping in the carriage house were not intact as of the time of the fire on December 20, 2002. There are no witnesses in the case who have testified that the water in the carriage house and in the piping under the sink in the carriage house was not turned on and pressurized at the time the fire started on Friday, December 20, 2002.

**Argument**

The testimony set forth above makes it clear and undisputed that Al Kemp was not soldering on Thursday, December 19, 2002. The sworn testimony in the case further makes clear, in an undisputed fashion, that at the time the fire began, all joints of the water piping were intact, the water was turned on in the carriage house and the water piping under the sink was pressurized. There is no testimonial evidence and there is no documentary evidence that Al Kemp was soldering on December 19, 2002. Thus, there is no testimonial evidence and there is no documentary evidence that Al Kemp could have in any way caused the December 20, 2002 fire at the Marino carriage house. Knowing this and knowing that the theories espoused by his own experts will not hold

up, counsel for Pacific Indemnity now argues that Mr. Kemp's experts should be restricted in the scope of their testimony.

First, plaintiff argues that Quinn Horn should be precluded from testifying as to what a plumber would "likely" do or what plumbers "typically" do under the circumstances which constitute the particular facts of this case. It may be that plaintiff is entirely correct in this regard and that Dr. Horn should not be talking to the jury about what plumbers generally are "likely" to do or what plumbers generally "typically" do when the issue in this case is what Al Kemp did or would do. There can be no dispute that Al Kemp is competent to testify as to what his habit, custom and practice would be under the circumstances of this case (See F.R.Evid. 406), and Dr. Horn is certainly able to testify based on any such evidence provided to him "at or before the hearing." F.R.Evid. 703. Obviously, any such change in the nature of the testimony of Dr. Horn, first proposed to counsel for the plaintiff over two weeks ago (See Memorandum In Support Of Plaintiff's Motion In Limine, n. 4), would cause no harm and no prejudice to plaintiff since any such evidence was or would have been available to counsel for the plaintiff when he first deposed Al Kemp in July 2005. See Ferrara & DiMercurio v. St. Paul Mercury, 240 F.3d 1 (1st Cir. 2001).

Next, plaintiff seeks to preclude Dr. Horn from testifying that at the time of the fire all the joints of water piping in the carriage house where the fire occurred were intact and to preclude Dr. Myers from testifying that Al Kemp did not perform soldering in the kitchen of the carriage house on the afternoon of December 19, 2002 or that, at the time the fire began, all the joints of the water piping in the carriage house were intact, the water was turned on in the carriage house and the water piping under the sink was

pressurized. However, this is exactly the state of the undisputed testimony in this case as set forth above. If the experts can't reach conclusions based on undisputed testimony, then Rule 703 has no function at all.

It may be that counsel for Pacific Indemnity is concerned because the statements of Dr. Horn and Dr. Myers are set forth in a paragraph titled "Conclusions." However, Mr. Kemp submits that this is nothing more than a semantic issue. The testimony to date in the case is consistent with and does not in any way conflict with the statements made by Dr. Horn and Dr. Myers. The opinions of Dr. Horn and Dr. Myers, unlike those of Mr. Klem, are consistent with all of the sworn testimony in the case. Therefore, it is entirely consistent for Dr. Horn and Dr. Myers to recite what the undisputed sworn testimony in the case sets forth. They are entitled to rely on the testimony of witnesses in reaching their opinions. F.R.Evid. 703.

Of greater concern to the defendant, however, is the duplicitous nature of the plaintiff's argument. On the one hand, plaintiff argues that Dr. Horn and Dr. Myers cannot testify that Al Kemp did not perform soldering in the kitchen of the carriage house on December 19, 2002 and cannot testify that at the time the fire began all joints of the water piping in the carriage house were intact, the water was turned on and the water piping under the sink was pressurized, consistent with all sworn testimony in the case. On the other hand, plaintiff's own expert, Thomas Klem, has drafted a report which, inconsistent with the sworn testimony in the case, states that "the water to the carriage house was off at the time of the fire" and further states that Al Kemp was doing soldering work "late in the day on Thursday, December 19, 2002." (Report of Thomas Klem dated March 23, 2006, at 14, attached hereto as <u>Exhibit B</u> to Ryan Affidavit.) It would seem

that rather than Dr. Horn and Dr. Myers being prohibited from testifying that Al Kemp was not soldering on Thursday, December 19, 2002, and that all joints were intact and pressurized at the time the fire started, which statements are consistent with the undisputed sworn testimony in the case, Mr. Klem should be prohibited from testifying that Al Kemp was soldering on Thursday, December 19, 2002, and that the water was off in the carriage house on Thursday, December 19, 2002, which statements are entirely inconsistent with the undisputed sworn testimony in the case.[1]

As a final note, plaintiff attempts to argue that for some reason Dr. Myers cannot rely on the report of Dr. Horn for his, Dr. Myers', opinion. However, Federal Rule of Evidence 703 allows one expert to take into account the report and opinions of another expert when reaching his or her own opinion. Ferrara and DiMercurio v. St. Paul Mercury, 240 F.3d 1, 9 (1st Cir. 2001).[2]

**Conclusion**

Contrary to the assertions of the plaintiff's motion, the defendant's experts' opinions are grounded in established science applied to the facts and sworn testimony of the case. In contrast, it is plaintiff's experts' opinions that are against all sworn testimony and are substantially based on conjecture and speculation. Under such circumstances, plaintiff's Motion, while notable for its sheer Chutzpah, should be denied.

---

[1] Not only is Mr. Klem's statement the very opinion evidence to which plaintiff objects, see U.S. v. Shay, 57 F. 3d 126,131 (1st Cir. 1995), but, worse than that, Mr. Klem's opinions, which will be subject to defendant's own Daubert motion, are without any testimonial basis whatsoever.

[2] Plaintiff's position is not only legally incorrect but is set forth in plaintiff's memoranda in a manner which is confusing at best and misrepresentative at worst. Plaintiff makes reference at page 8 of its memorandum in support of plaintiff's Motion In Limine To Exclude Certain Testimony to "Horn's inadmissible conclusion that the valve/riser joint came apart during the fire" and yet, at page 4 of that same memorandum, states: "Kemp's metallurgist, Quinn Horn, issued a report setting forth a theory as to how heat from an already developed fire which originated elsewhere could supposedly have melted the valve/riser joint while leaving the ridge of solder on the riser adjacent to the joint intact. Plaintiff is prepared to discredit this theory from a factual, technical, and plausibility standpoint, and does not seek to exclude such testimony."

8

REQUEST FOR ORAL ARGUMENT

The defendant Alfred Kemp, Individually and d/b/a Kemp Plumbing, hereby requests an oral argument with respect to its Opposition To Plaintiff's Motion In Limine To Exclude Certain Testimony From Defendant Kemp's Experts Quinn Horn And Timothy Myers.

Respectfully submitted,
The Defendant,
ALFRED KEMP, Individually and d/b/a KEMP PLUMBING
By his attorney,

/s/ John J. Ryan, Jr.
John J. Ryan, Jr., BBO# 435620
Ryan, Coughlin & Betke, LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050

**CERTIFICATE OF SERVICE**

I, John J. Ryan, Jr., hereby certify that on May 17, 2006, I served a copy of the within document was served via electronic filing to: Matthew H. Feinburg, Esq., Feinberg & Kamholtz, 125 Summer Street, 6th Floor, Boston MA 02110; Daniel Q. Harrington, Esq., Cozen & O'Connor, 1900 Market Street 3rd Floor, Philadelphia, PA 19103; Philip Tierney, Esq., Finnegan, Underwood, Ryan & Tierney, 22 Batterymarch Street, Boston, MA 02109.

/s/ John J. Ryan, Jr.
John J. Ryan, Jr.