IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PACIFIC INDEMNITY COMPANY, | : CIVIL ACTION NO. |
| | : 04-11975(RWZ) |
| Plaintiff, | : |
| v. | : |
| | : |
| ALFRED KEMP, Individually and d/b/a | : **PLAINTIFF'S MEMORANDUM IN** |
| KEMP PLUMBING | : **OPPOSITION TO DEFENDANT** |
| | : **KEMP'S "MOTION IN LIMINE TO** |
| and | : **PRECLUDE EVIDENCE OF** |
| | : **ALLEGED PRIOR/UNRELATED** |
| MARTIN SANDBORG, Individually and d/b/a | : **CONDUCT"** |
| SANDBORG PLUMBING AND HEATING, | : |
| | : |
| Defendants. | : |
| | : |

Defendant Kemp's "Motion In Limine To Preclude Evidence Of Alleged Prior/Unrelated Conduct" (Document 32, hereafter "Kemp's Motion") seeks to exclude three categories of evidence:

1.   First, Kemp seeks exclusion of evidence that Kemp scorched wooden structural members with his torch on other job sites. Plaintiff has no intention of introducing such evidence, unless Mr. Kemp "opens the door" by offering evidence that he is generally careful, conscientious, competent and safe while using a torch.

2.   Second, Kemp seeks to exclude evidence that he did not have a fire extinguisher with him while using his torch in the Marino carriage house. There is no evidence that Mr. Kemp was aware he had touched off the fire in the Marino carriage house at the time he did so. Therefore, plaintiff agrees that, in the circumstances of this case, Mr. Kemp's violation of the Fire Code by failing to have a fire extinguisher with him is not causally related to the damages claimed by plaintiff. Therefore, plaintiff will not offer such evidence, again, unless Mr. Kemp "opens the door."

3. Finally, Mr. Kemp seeks to exclude evidence that he "scorched" (i.e., burned) the bottom of the very same wooden kitchen sink cabinet where plaintiff alleges that Kemp started the fire which is the subject of this litigation, with the very same torch that plaintiff alleges caused the fire. This evidence is admissible for multiple reasons that do not implicate Rule 404(b) of the Federal Rules of Evidence (hereafter "Rule 404(b)").

Plaintiff disputes the premise of Kemp's Motion that Kemp's scorching/burning of the bottom of the kitchen sink cabinet with his torch is an "other," "unrelated," or even "prior" act, within the scope of Rule 404(b). Rather, it is part and parcel of the same negligent course of conduct which resulted in his ignition of the fire at the rear of the cabinet. U.S. v. Epstein, 426 F.3d 431, 438-439 (1st Cir, 2005); U.S. v. McGauley, 279 F.3d 62, 72-74 (2002). "Rule 404(b) by its very terms, excludes only <u>extrinsic</u> evidence – evidence of <u>other</u> crimes, wrongs, or acts – whose probative value depends upon a forbidden inference of . . . propensity." U.S. v. Manning, 79 F.3d 212, 219 (1st Cir. 1996)(emphasis added); U.S. v. Candeloria-Silva, 162 F.3d 698, 703-704 (1st Cir. 1998).

By way of brief background, the bottom of the kitchen sink cabinet is the only portion of the cabinet to survive the carriage house fire relatively intact. Sergeant Francis McGinn, the lead investigator of the fire on behalf of the Massachusetts State Fire Marshal's office, observed discrete areas of scorching on the base of the cabinet which were not consistent with general, fire-related damage, but instead were consistent with the damage that would be inflicted by a plumber's torch. Plaintiff's own fire investigator, Thomas Klem, made the same observation. The cabinet was brand new and newly installed, and Mr. Kemp was the only person ever to have used a torch in it. Therefore it follows that any torch-inflicted damage to the cabinet must have been inflicted by Mr. Kemp.

### A. The Scorching On The Bottom Of The Cabinet Proves That Kemp Used His Torch Under The Cabinet On December 19, 2002.

The fire at the Marino carriage house was discovered shortly after 2:00 a.m. on Friday, December 20, 2002. Plaintiff contends that Mr. Kemp ignited the fire with his torch late in the afternoon of Thursday, December 19, 2002, when he inadvertently touched off combustibles at the rear of the kitchen sink cabinet and that the fire then smoldered in concealed areas for a number of hours until it finally broke out into open burning and was discovered well in progress. A major issue of dispute in the case is whether Mr. Kemp even used the torch in the kitchen sink cabinet on the afternoon of Thursday, December 19, 2002. Plaintiff intends prove that Mr. Kemp used the torch late in the afternoon of December 19 to begin dismantling valves, piping and fittings he admittedly had to dismantle due to his previous installation error, which he only discovered that afternoon. Mr. Kemp, however, denies using a torch at all on December 19. Mr. Kemp says he last used a torch in the kitchen sink cabinet on Wednesday, December 18, 2002. Also, Kemp denies ever scorching the kitchen sink cabinet and denies there was any scorching in the cabinet.

In testimony elicited by Kemp's counsel, which Kemp's counsel has thus far been fond of referring to in Court filings, Kraig Magnussen, the Project Superintendent for the carriage house renovation, testified that he never saw any evidence of burning in the kitchen sink cabinet. (See Document 30, Page 3, Footnote 2; Magnussen Deposition, Exhibit "A," Page 99.)[1]

Finally, and most importantly, co-defendant Martin Sandborg claims he looked in the kitchen sink cabinet on the afternoon of December 19, 2002 and says that he never saw any evidence of burning in this or any other cabinet Kemp worked on. (Sandborg Dep., Exhibit "B," Pp. 31-32, 54).

---

[1] All Exhibits referenced in this Memorandum are attached to the Affidavit of Daniel Q. Harrington in Opposition to Defendant Kemp's "Motion In Limine To Preclude Evidence Of Alleged Prior/Unrelated Conduct."

- 4 -

The testimony of Kemp, Magnussen and, most importantly, Sandborg, regarding the alleged absence of evidence of burning in the kitchen sink cabinet as of the afternoon of December 19, 2002, which is after the last time Mr. Kemp admits that he used a torch in the cabinet, when taken in conjunction with the anticipated testimony of Sergeant McGinn and Mr. Klem that the cabinet was scorched by a torch, will serve to establish that, notwithstanding Mr. Kemp's denials, he did, in fact, use a torch on December 19, 2002, after Messrs. Magnussen and Sandborg had last inspected the cabinet. Thus, the evidence of scorching will serve to prove a key fact that is in dispute that is entirely unrelated to any "propensity" Mr. Kemp may have towards negligent conduct.

**B.** **The Scorching Of The Cabinet Is Admissible For Impeachment.**

Alternatively, if Kemp now takes the position that the scorching of the sink cabinet (which he has thus far denied, under oath, occurred at all) could have occurred prior to December 19, 2002, the evidence of scorching would directly impeach Mr. Sandborg's testimony that Sandborg looked inside the cabinet on December 19. Under those circumstances, Mr. Sandborg could not have inspected Mr. Kemp's work under the cabinet as he says he did, consistent with his other testimony that he never saw any evidence that Mr. Kemp had ever scorched any cabinet. The evidence of scorching would similarly impugn the reliability of Mr. Magnussen's observation (or, non-observation) of Kemp ever burning this or any other cabinet. It would similarly contradict Kemp's own sworn testimony that he never saw any scorching in the sink cabinet.

### C.  The Scorching Of The Bottom Of The Cabinet Is An Intrinsic Part Of And Inextricably Intertwined With The Event Leading To The Fire.

Kemp's argument that Kemp's scorching/burning of the bottom of the kitchen sink cabinet is somehow an "other," "different" or "unrelated" "act," for purposes of Rule 404(b) from Kemp's ignition of combustible material at the <u>rear</u> of the cabinet, is artificial.  In <u>Elliot v. Turner Construction Co.</u>, 381 F.3d 995, 1003-1004 (10th Cir. 2004), an employee of a subcontractor who was injured on a bridge erection project sued the general contractor and other subcontractors for his injuries.  The Tenth Circuit upheld the district court's admission of evidence of multiple errors by defendants on the same project which preceded the collapse of the bridge and the plaintiff's injury.  The Court held that the prior events established a "pattern of negligence" in connection with the very project where plaintiff was injured, which was intrinsic to the negligence claim.  As in this case, the other negligent acts were "part of the same tortious event."  The court stated that Rule 404(b) does not even come into play unless the challenged evidence "involves an act wholly apart from and not intrinsically related to the asserted claim." 381 F.3d at 1004.

First Circuit authority, including one of the cases cited in Kemp's Motion, similarly reject such artificial attempts to create separate "acts" out of what is essentially a single event or course of conduct, in order to exclude plainly relevant evidence under Rule 404(b).  For example, in <u>U.S. v. Currier</u>, 36 F.2d 11, 17-18 (1st Cir. 1987), a defendant charged with illegal sale of Valium to a government agent object the introduction of a surreptitiously recorded conversation in which the defendant also offered to sell the agent marijuana and cocaine, offenses with which the defendant had not been charged.  In upholding the district court's admission of the recording, the First Circuit noted that the defendant's offer to sell other drugs was both "close in time" and "of a strikingly similar nature" to the crime charged.  836 F.2d at 17.  The court then noted that the defendant's course of conduct was "closely intertwined" with the charged offense.  <u>Id</u>.  In this

case, Kemp's burning of the bottom of the kitchen sink cabinet is similarly "close in time" (as well as in geographic proximity) and "of a strikingly similar [if not identical] nature," to the act which plaintiff alleges caused the fire.  See U.S. v. Fields, 871 F.2d 188, 197-198 (1st Cir. 1989)(circumstances of arrest for other crimes which occurred three years after crimes charged properly admitted to prove intent to conspire).

Plaintiff disputes that the two locations of burning or scorching within the same kitchen sink cabinet should be considered two "acts" at all, but even if they were, they are inextricably intertwined.  They are both part of the same project, both occurred within a distance of inches, and both occurred within a days' time, at most.  In fact, the previously referenced testimony of Kemp, Magnussen and Sandborg suggests that the scorching of the bottom of the cabinet occurred at essentially the same time as the ignition of the fire at the rear of the cabinet.  It is obviously not desirable to burn kitchen cabinets, regardless of whether, through sheer luck or happenstance, the burning results in a mere "scorch" or, instead, causes two million dollars in property damage.  Kemp does not allege that his safety measures, if any, when using the gas-fueled open flame device were any different on one day as opposed to the next.  The evidence of scorching in the very same cabinet where plaintiff alleges Kemp started the fire therefore supports plaintiff's contention that Kemp's safety precautions, on this very project, were inadequate.  In other words, plaintiff will not use evidence of Kemp's negligence on one occasion to prove that he was negligent on another occasion.  Evidence that Kemp scorched the bottom of the cabinet directly establishes the negligent conduct which caused this fire.

"Probative value must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charged."  U.S. v. Fields, supra, 871 F.2d at 197.  Here, the time interval, if not non-existent, is no more than a day, and Kemp's burning of the same cabinet in two locations certainly bears the requisite "resemblance," but for the fortuitous

difference in the result.  U.S. v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989)(unauthorized checks drawn by the defendant which were "virtual replicas" to those which were the subject of embezzlement charges against defendant were properly admitted).

In fact, conditions in the kitchen sink cabinet after Mr. Kemp discovered that he was going to have to dismantle and unsolder plumbing fittings on December 19, 2002 presented a significantly greater fire safety hazard than the conditions in the cabinet on December 18, 2002, when Kemp claims he last soldered in the cabinet.  On December 18, when Kemp says he installed the valves and piping in the sink cabinet, the sink itself had not yet been installed.  This means that Kemp had no visual obstructions and few, if any, physical obstructions.  In contrast, by the time Kemp discovered, on the afternoon of December 19, that he was going to have to dismantle piping under the sink, the sink had been installed.  As anybody who has had to spend time under a kitchen sink would attest, Kemp's visual and physical access to perform this work would have been severely obstructed, as compared to the previous day.  Assuming, for the sake of argument, that Kemp's scorching of the bottom of the cabinet did occur on December 18 (the most favorable scenario for Kemp, but one that is inconsistent with his testimony and that of Magnussen and Sandborg), this would mean that Mr. Kemp was unable to manage to operate his torch in the essentially obstruction-free cabinet without burning the cabinet.  It would therefore be reasonable to infer that Kemp would have been even more likely to inadvertently burn the cabinet again when the obstructions, and associated hazards, were much greater.  Such an inference is in no way based upon Mr. Kemp having a "character" or "propensity" for negligence within the scope of Rule 404(b), but rather is based upon his specific conduct under the specific conditions that are relevant to this specific case.

## **CONCLUSION**

As the First Circuit has noted about Rule 404(b), "the most striking aspect of the rule is its inclusive rather than exclusionary nature: should the evidence prove relevant in any other way it is admissible, subject only to the rarely invoked limitations of Rule 403." U.S. v. Zeuli, 725 F.2d 813, 816 (1st Cir. 1984). Rule 404(b)'s list of reasons for which "other act" evidence may be admitted is "not exhaustive" as "the range of relevancy outside the ban is almost infinite." U.S. v. Fields, supra, 871 F.2d at 196 (quoting McCormick on Evidence); Udemba v. Nicoli, 237 F.3d 8, 15 (1st Cir. 2001). Plaintiff therefore respectfully requests that Defendant Kemp's "Motion In Limine To Preclude Evidence Of Alleged Prior/Unrelated Conduct" Be Denied.

                                               Respectfully submitted,

                                               COZEN O'CONNOR

DATE: 3/19/07                    BY:   /s/Daniel Q. Harrington
                                                     DANIEL Q. HARRINGTON
                                                     1900 Market Street
                                                     Philadelphia, PA  19103
                                                     215-665-2126

                                                     MATTHEW H. FEINBERG
                                                     FEINBERG & KAMHOLTZ
                                                     125 Summer Street, 6th Floor
                                                     Boston, MA  02110
                                                     617-526-0700

                                                   Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of Plaintiffs' Memorandum in Opposition to Defendant Kemp's Motion in Limine to Preclude Evidence of Alleged Prior/Unrelated Conduct was forwarded via electronic notification of filing on the 19th day of March, 2007, to the following:

Philip T. Tierney, Esquire
FINNEGAN, UNDERWOOD, RYAN & TIERNEY
22 Batterymarch Street
Boston, MA  02109
Christopher G. Betke, Esquire
RYAN, COUGHLIN & BETKE, LLP
175 Federal Street
Boston, MA  02110

/s/ Daniel Q. Harrington
DANIEL Q. HARRINGTON