IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PACIFIC INDEMNITY COMPANY<br>15 Mountain View Road<br>Warren, NJ 07061-1615<br><br>          Plaintiff,<br><br>v.<br><br>ALFRED KEMP, Individually and d/b/a<br>KEMP PLUMBING<br>P.O. Box 1322<br>Pembroke, MA 02359<br><br>          and<br><br>MARTIN SANDBORG, Individually and d/b/a<br>SANDBORG PLUMBING AND HEATING<br>13 Liberty Street<br>Sandwich, MA 02563,<br><br>          Defendants. | C.A. No.: 04-11975-RWZ<br>BBO# 552588 |

**DEFENDANT ALFRED KEMP D/B/A KEMP PLUMBING'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO
PRECLUDE PLAINTIFF FROM
OFFERING TESTIMONY AS TO LOCATION OF
COLD WATER VALVE, TARP OR EVIDENCE THAT THE VAVLE WAS
UNDER TARP POST-FIRE DUE TO SPOLIATION OF EVIDENCE**

Now comes the defendant Alfred Kemp d/b/a Kemp Plumbing ("Kemp"), and moves in limine that this Court preclude plaintiff from offering any testimony at trial regarding the location of a cold water valve, a tarp and that the valve was under a tarp beneath the kitchen sink after the fire on the grounds of spoliation of evidence.

**Background**

This lawsuit arises out of a fire at a carriage house on the property of Roger Marino in the early morning hours of December 20, 2002. The fire occurred while the carriage house was unoccupied but was undergoing renovations. Defendant, Martin Sandborg, was retained to do the plumbing work associated with the renovations at the carriage house. Mr. Sandborg, in turn, subcontracted some of that work to defendant Kemp.

Following the fire, the plaintiff retained a cause and origin expert, Thomas Klem, to investigate the fire and document the scene. As a result of that investigation, Klem generated a lengthy report on or about July 29, 2005. In this report, Klem tenders an opinion that the fire originated under the sink in the carriage house and that the likely source of ignition was a torch allegedly used by Kemp on the day of the fire.[1] See Origin and Cause Analysis report of Thomas Klem, dated July 29, 2005, pg. 18 (the "July 2005 Report"), attached as Exhibit A to affidavit of Christopher G. Betke, Esq. at Docket Entry No. 44.

In the July 2005, Klem details his investigation, the evidence found at the scene and the location of that evidence. With respect to the area where Klem contends the fire originated, which was a cabinet area beneath a sink, he reports that the metal sink had collapsed into the base of the cabinet. Id. at pg. 8. Klem also states a "folded cotton 'drop cloth' was found stored at the base of the sink cabinet that was fire damaged. The drop cloth 'protected' the base are of the cabinet congruent to its position." Id. at pg. 9.

---

[1] Kemp denies using a torch on the day of the fire, and all witnesses confirm that Kemp was not using a torch on the day of the fire. Kemp contends that Klem's opinion is flawed and is, itself, the subject of a *Daubert* challenge.

2

Despite stating that he observed this drop cloth, Klem did not produce any pictures documenting the location of the drop cloth as found at the fire scene.

Klem also stated in this report:

> Examined in detail by Mr. Lester MacLaughlin, <u>subsequent to our evidence collection efforts, determined that the cold water valve or stop assembly was loose on the cold water riser pipe. In review of our on-site exam procedures and photographs, we determined that during our initial exam on December 23, 2002, the valve was off the cold water rise and lying on the bottom of the kitchen base cabinet.</u> In an effort to understand how all the pieces fit together, etc., during our initial on-site efforts, the valve was found at this location and was placed back on the cold water riser in order to secure it. The valve stayed there, loosely fitted, until examined off-site by Mr. MacLaughlin. **We did not realize the significance of the position of the valve until later in the investigation. As a result, our initial actions regarding the valve were not communicated to the parties to the investigation.** However, a review of Dedham Fire Department photos taken December 20, 2002, by Lt Fontaine after knock down of the fire and during the initial investigation, shows that the cold water shut off valve assembly was indeed not in place. Finally regarding this matter, our initial photos of the fire shows the cold water stop not in place. Photos showing that the stop was off originally were made available to all interested parties via the internet prior to the first joint on-site inspection.

Id. at pgs. 12-13 (emphasis supplied).

Thus, in the July 2005 Report, Klem notes the existence of the drop cloth, notes the existence of the valve but acknowledged moving the valve before the defendants were given an opportunity to review it or observe it in its post-fire location. Notably, Klem did not state that valve was "under the tarp" despite the mentioning both the valve and the tarp. While the July 2005 Report states that the cold water valve allegedly was lying on the bottom of the kitchen cabinet, the photographs produced by Klem do not document its precise location. In addition, there are no photographs produced by Klem depicting where the drop cloth was after the fire. In sum, whether or where the cold water valve

3

was lying on the bottom of the kitchen base cabinet is something only Klem can suggest or testify to.[2]

On March 7, 2006, Kemp's expert, Quinn C. Horn, Ph.D., authored an expert report in which he opined that the cold water valve in question was soldered to a connecting pipe prior to the fire, but became separated from that pipe during the course of the fire because the heat from the fire was sufficient to melt the solder at the copper/brass interface, and the resulting pressure within the water line provided the force necessary to separate the piping from the cold water valve. See Exhibit D to affidavit of John J. Ryan, Jr., Esq. at Docket Entry No. 19. This evidence presented a problem for the plaintiff insurer in its effort to pin the cause of the fire on the defendant plumbers.

As a result, Klem authored a rebuttal report dated March 23, 2006 (the "March 2006 Report"). In the March 2006 Report, Klem stated, for the first time, as follows:

> During our initial investigation of the fire scene with Trooper McGinn on December 23, 2002, we noted the tarp under the sink. Neither the trooper nor I observed the valve on top of the tarp. Our initial photographs of the kitchen sink area confirm that the cold water valve was not in place and document that the separated valve was found located at the base of the sink cabinet. The tarp shows no signs of "shadowing" from the valve that would occur if the valve was dislodged during the fire and came to rest on top of the tarp during the fire as alleged by others. **These factors lead to our conclusions that the valve was under the tarp during the fire** and that the water to the building was off.

March 2006 Report at pg. 9 (emphasis supplied), attached as Exhibit D to affidavit of Christopher G. Betke, Esq. at Docket Entry No. 44. Again, Klem did not provide any pictures documenting the actual location of the alleged tarp as it was after the fire, any pictures depicting where the cold water valve allegedly was before Klem moved it post-

---

[2] Similarly, in the State Fire Marshall's report, there is no mention of the cold water valve being found lying on the bottom of the kitchen base cabinet after the fire.

4

fire and did not provide any documentation of the location of either item as they related to each other.

**Argument**

Spoliation is the destruction, or the meaningful alteration, of evidence. Generally, spoliation has come to mean the tampering with, loss of, or destruction of any form of potential evidence, when that destruction interferes with another party's civil action. The policy underlying the spoliation doctrine is to prevent unfair prejudice to a party. The unfair prejudice results <u>when a party places itself in a position of having the only first-hand knowledge of an item of evidence</u> or where a party destroys an item of evidence which is more persuasive for the other party. Nally v. Volkswagen of America, Inc., 405 Mass. 191, 198 (1989) (emphasis supplied); Bolton v. Massachusetts Bay Transportation Authority, 32 Mass. App. Ct. 654, 656 (1992); Johnson v. Harvard University, 1996 WL 1186805 at *2 (Mass. Super.). District courts have inherent power to exclude evidence that has been improperly altered or damaged by a party where necessary to protect the non-offending party from undue prejudice. Sacramona v. Bridgestone/Firestone, Inc., 103 F.3d 444, 446 (1st Cir. 1997). Factors to be considered in determining whether to exclude evidence as a sanction for spoliation include:

1) whether the adverse party was prejudiced by the destruction of evidence;
2) whether the prejudice can be cured;
3) the practical importance of the evidence;
4) whether the destruction was in good or bad faith, and
5) the potential for abuse if the evidence is not excluded or the party is not otherwise sanctioned.

See Champman v. Bernard's, Inc., 167 F. Supp.2d 406, 413 (D.Mass. 2001) (citing McGuire v. Acufex Microsurgical, Inc., 175 F.R.D. 149, 156 (D.Mass. 1997).

In this case, plaintiff should be precluded from offering any testimony regarding the locations of the cold water valve, the tarp and their relationship to each other because plaintiff's expert moved those items of evidence before the defendant was able to observe them and plaintiff's expert did not adequately document their respective location before moving them. Plaintiff's expert was, by his own admission, the person who documented and took possession of the evidence. In the July 2005 Report, Klem cites to the 2004 edition of NFPA 921 and alleges that he conducted his on-site analysis of the carriage house using standard fire investigation protocols set forth in NFPA 921. Section 16.5.2 of NFPA 921 is entitled "Documenting the Collection of Physical Evidence". Section 16.5.2.1 of NFPA 921 provides as follows:

> **Physical evidence should be thoroughly documented before it is moved.** This documentation can be best accomplished through field notes, written reports, sketches, and diagrams, with accurate measurements and photography. **The diagramming and photography should always be accomplished before the physical evidence is moved or disturbed.** The investigator should strive to maintain a list of all evidence removed and of who removed it.

See §16.5.2.1 of NFPA 921 (emphasis supplied).

Section 16.5.2.2. of NFPA 921 states as follows:

> The purpose of such documentation is twofold. First, the documentation should assist the fire investigator in establishing the area of origin of the physical evidence, including not only its location at the time of discovery, but also its condition and relationship to the fire investigation. Second, **the documentation should also assist the fire investigator in establishing that the physical evidence has not been contaminated or altered.**

See §16.5.2.2 of NFPA 921 (emphasis supplied).

In this case, Klem moved the evidence from under the sink before the defendants were given an opportunity to inspect the scene. Yet, Klem did not document the location of the valve, the tarp or their respective locations as they related to each other, which

6

clearly violates the tenants of Sections 16.5.2.1 and 16.5.2.2 of NFPA 921. By doing so, Kemp has been unfairly prejudiced unfair because plaintiff, through the conduct of its expert, has placed itself in a position of having the only first-hand knowledge of an item of evidence.

There is reason to be very concerned about what transpired here. In the July 2005 Report, Klem mentions the tarp and mentions the valve (it was on the bottom of the kitchen cabinet) but makes no claim that the valve was found *under the tarp*. Rather, it is only later, when confronted with Kemp's theory that the valve came off due to heating from the fire that Klem took the position that it was under a tarp. Nevertheless, he did not document either item before moving them.

Simply put, because plaintiff's expert moved the valve and the tarp before the defendant's expert was permitted to inspect the scene and because Klem did not photograph the location of the valve, the location of the tarp or their relative locations with respect to each other before unilaterally moving the evidence, Klem has, by his actions, made himself the sole authority on the locations of these items. This is unfair and should not be permitted by the Court. Given that Klem's actions prejudiced Kemp, plaintiff should be precluded from offering any testimony of the location of the valve, tarp and the valve being under the tarp after the fire at trial.

WHEREFORE, the defendant, Alfred Kemp d/b/a Kemp Plumbing, hereby requests this Court to issue an order precluding plaintiff from offering any testimony regarding the locations of the cold water valve, the tarp or that the valve was underneath the tarp due to Klem's spoliation of this key evidence.

Defendants,
Alfred Kemp, Individually and d/b/a Kemp Plumbing
By their attorney,

/s/ Christopher G. Betke
Christopher G. Betke, BBO# 552588
Ryan, Coughlin & Betke, LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050

**CERTIFICATE OF SERVICE**

I, Christopher G. Betke, hereby certify that on March 22, 2007, I served a copy of the within document via electronic filing to: Matthew H. Feinburg, Esq., Feinberg & Kamholtz, 125 Summer Street, 6th Floor, Boston MA 02110; Daniel Q. Harrington, Esq., Cozen & O'Connor, 1900 Market Street 3rd Floor, Philadelphia, PA 19103; Philip Tierney, Esq., Finnegan, Underwood, Ryan & Tierney, 22 Batterymarch Street, Boston, MA 02109.

/s/ Christopher G. Betke
Christopher G. Betke