IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PACIFIC INDEMNITY COMPANY<br>15 Mountain View Road<br>Warren, NJ 07061-1615<br><br>Plaintiff,<br><br>v.<br>ALFRED KEMP, Individually and d/b/a<br>KEMP PLUMBING<br>P.O. Box 1322<br>Pembroke, MA 02359<br><br>and<br><br>MARTIN SANDBORG, Individually and d/b/a<br>SANDBORG PLUMBING AND HEATING<br>13 Liberty Street<br>Sandwich, MA 02563,<br><br>Defendants. | C.A. No.: 04-11975-RWZ<br>BBO# 552588 |

**DEFENDANT ALFRED KEMP D/B/A KEMP PLUMBING'S
MOTION IN LIMINE TO PRECLUDE TESTIMONY OF THOMAS EAGAR
REGARDING TESTING HE CONDUCTED ON EXEMPLAR SOLDERED
CONNECTIONS**

Now comes the defendant Alfred Kemp d/b/a Kemp Plumbing ("Kemp"), and moves in limine that this Court preclude any and all testimony of plaintiff's expert witness, Thomas Eagar ("Eagar"), with regard to testing he conducted on exemplar soldered connections. As grounds therefore, Kemp states that Eagar's tests did not accurately replicate the conditions at the time of the fire. Thus, Eagar's methods did not reliably apply the facts of the case and the danger that such evidence will mislead the jury greatly outweighs its probative value.

**Pertinent Background**

This lawsuit arises out of a fire at a carriage house on the property of Roger Marino in the early morning hours of December 20, 2002. The fire occurred while the carriage house was unoccupied but was undergoing renovations. Defendant, Martin Sandborg, was retained to do the plumbing work associated with the renovations at the carriage house. Mr. Sandborg, in turn, subcontracted some of that work to defendant Kemp.

Plaintiff alleges that the fire was caused by Kemp's negligence in failing to exercise proper care with respect to performing soldering work on the sink cabinet in the carriage house on Thursday, December 19, 2002. Plaintiff contends that the fire burned in the wall unnoticed by the workers present at the carriage house as they went about their business that day. As a result of the fire, Roger and Michelle Marino made a claim against plaintiff, Pacific Indemnity, their property insurer. Pursuant to the policy, Pacific Indemnity has paid the Marinos and brought this subrogation action.

Plaintiff has indicated that it will call Thomas Eagar, Sc.D., P.E., as an expert witness at trial. Eagar is a metallurgist who was retained by the plaintiff to examine the plumbing installation under the sink. Plaintiff's Expert, Thomas Eagar's Report, dated February 24, 2006, p. 1 (hereinafter "Eagar's Report"). According to Eagar's Report, he will testify that: "Tests of an exemplar solder joint exposed to a flaming fire cause a solder joint leak without any evidence of full joint melting or separation of the valve from the nipple." Eagar's Report, p. 3.

**Argument**

To be admissible, expert testimony must meet the requirements of Fed R. Evid. 702. U.S. v Corey, 207 F. 3d. 84 (D. Mass. 2000). Rule 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue a witness qualified as an expert …may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Court is required to act as a "gatekeeper," admitting expert opinion evidence only after first determining that the evidence is reliable. Daubert v. Merill Dow Pharmaceuticals, 509 U.S. 579, 589 (1993). When evaluating expert testimony to determine reliability the trial judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and…whether that reasoning or methodology properly can be applied to the facts in issue." American Computer Innovators, Inc, 74 F. Supp. 2d at 66-67, quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993).

We anticipate that plaintiff's expert, Thomas Eagar, will attempt to testify regarding tests he conducted in his laboratory with valve to copper nipple solder joints. Specifically, he conducted tests on valve and copper nipple systems in an attempt to determine whether an advancing fire could melt the solder on a soldered joint. However, Eagar failed in his tests to replicate the conditions that existed at the time of the fire and thereby failed to apply his principles and methods reliably to the facts of the case as required under the Federal Rules of Evidence. Fed. R. Evid. 702.

3

In conducting these tests, Eagar failed to account for several significant variables that existed at the time of the fire and that would alter the results of any attempted recreation of events. First, Eagar claims to have exposed the exemplar solder joint to a "flaming fire" without explaining what that might be. Plaintiff's Expert, Thomas Eagar's Report, dated February 24, 2006, p. 3. In fact, Eagar does not even document the temperature of the flaming fire to which he exposed his exemplar solder joint. Secondly, Eagar's test presupposes that the entire pipe was filled with water up to the point of the soldered joint, as evidenced by the fact that he substitutes an ordinary garden hose for the actual pipe in his test. Due to the fact that the valve was not "bled" on the Wednesday after Kemp turned it on and pressurized it. The air in the pipe would not have been released, thus, contrary to Eagar's so-called test water would not have been located directly at the joint but, rather, at some point below the joint underneath the air that remained in the pipe. Third, Eager similarly did not attempt to deduce or account for the water pressure that would have existed inside the pipe. In fact, Eagar's report does not state what was the pounds per square inch ("psi") of pressure in his "test" and does not indicate any effort to ascertain it for the Marino carriage house in Dedham. Finally, Eagar's test failed to account for the effect that that the sink falling in on top of the structure would have on the soldered joint. Therefore, Mr. Eagar's testimony regarding the tests he conducted should be excluded as unreliable under the Federal Rules of Evidence. Fed. R. Evid. 702.

Additionally, Mr. Eagar's testimony about the tests he conducted should be excluded because of the danger that its probative value is substantially outweighed by the

4

danger that it might mislead the jury. Fed. R. Evid. 403[1]. In a products liability action brought after a car accident, defendants recreated the accident and attempted to introduce a videotape of the recreation. Fusco v. General Motors Corp., 11 F.3d 259, 262 (1st Cir. 1993). The plaintiff filed a motion in limine to exclude the videotape on the grounds that the recreation did not replicate the conditions that existed at the time of the actual accident. Id. The defendants admitted that the conditions were not the same and argued that the tape "was admissible to show general scientific principles and that the dissimilarities went to weight and not admissibility." Id. at 263. In upholding the trial judge's granting of plaintiff's motion in limine, the court explained, "Where that recreation could easily seem to resemble the actual occurrence, courts have feared that the jurors may be misled because they do not fully appreciate how variations in the surrounding conditions, as between the original occurrence and the staged event, can alter the outcome." Id. at 263-64. Therefore, the court determined that there must be a "substantial similarity in conditions" between the original event and the recreation or the trial judge should exercise his/her discretion to exclude the evidence. Id. at 264; Jodoin v. Toyota Motor Corp., Toyota Motor Sales, U.S.A., Inc., 284 F.3d 272, 278 (1st Cir. 2002).

Mr. Eagar's tests failed to account for highly significant variables including the effect of ambient heat during and after flashover on the soldered joint as opposed to the heat produced by his unexplained and undocumented "flaming fire," the location of the water inside the pipe, the water pressure that existed in the valve at the time of the fire, and the fact that the sink fell in on top of the structure during the fire. Therefore, the tests

---

[1] Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

conducted by him were not substantially similar to the actual conditions of the fire and should be excluded by the court because their limited probative value is substantially outweighed by the danger of misleading the jury. See id.;

WHEREFORE, the defendant, Alfred Kemp d/b/a Kemp Plumbing, hereby moves to preclude any and all testimony of plaintiff's expert witness, Thomas Eagar, with regard to testing he conducted on exemplar soldered connections.

Defendants,
Alfred Kemp, Individually and d/b/a Kemp Plumbing
By their attorney,

/s/ Christopher G. Betke
Christopher G. Betke, BBO# 552588
Ryan, Coughlin & Betke, LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050

### LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1 (A)(2), counsel have conferred and have attempted in good faith to resolve or narrow the issues raised by this Motion.

/s/ Christopher G. Betke
Christopher G. Betke

### CERTIFICATE OF SERVICE

I, Christopher G. Betke, hereby certify that on March 25, 2007, I served a copy of the within document via electronic filing to: Matthew H. Feinburg, Esq., Feinberg & Kamholtz, 125 Summer Street, 6th Floor, Boston MA 02110; Daniel Q. Harrington, Esq., Cozen & O'Connor, 1900 Market Street 3rd Floor, Philadelphia, PA 19103; Philip Tierney, Esq., Finnegan, Underwood, Ryan & Tierney, 22 Batterymarch Street, Boston, MA 02109.

/s/ Christopher G. Betke
Christopher G. Betke