IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PACIFIC INDEMNITY COMPANY, | : | CIVIL ACTION NO. |
| | : | 04-11975(RWZ) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALFRED KEMP, Individually and d/b/a | : | |
| KEMP PLUMBING | : | |
| | : | |
| and | : | |
| | : | **PLAINTIFF'S TRIAL BRIEF** |
| MARTIN SANDBORG, Individually and d/b/a | : | |
| SANDBORG PLUMBING AND HEATING, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## I.   INTRODUCTION

This is a property subrogation action involving a fire which was discovered during the early morning hours of Friday, December 20, 2002 at a carriage house on the estate of plaintiff's subrogors, Roger and Michelle Marino, located at 257 Westfield Street in Dedham, Massachusetts. The parties have stipulated that in the event of a verdict adverse to either or both defendants on liability, the Court shall enter judgment for plaintiff in the amount of $2,049,000, plus applicable pre-and-post-judgment interest.

The carriage house was in the final stages of an extensive renovation at the time the fire occurred. Defendant Martin Sandborg had contracted to perform the plumbing work in the carriage house on a time and materials basis. Sandborg, in turn, hired defendant Alfred Kemp to perform this plumbing work. Plaintiff will prove that the fire was caused by the negligence of

Mr. Kemp in unsoldering the plumbing fittings beneath the kitchen sink of the carriage house on the afternoon of Thursday, December 19, 2002. As discussed in § III D, below, this same evidence will establish defendant Sandborg's liability for breach of the implied warranty of workmanlike performance.

## II.     DAMAGES

| DESCRIPTION | AMOUNT |
|---|---|
| Stipulated damages amount | $2,049,000.00 |
| Plus 12% annual prejudgment interest pursuant to M.G.L. c.231, §6B, from September 13, 2004 to March 26, 2007 (2.53 years x 12%)(per diem = $673.64) | $ 622,443.36 |
| Defendants' Total Exposure | **$2,671,443.36** |

## III.    EVIDENTIARY ISSUES

### A.    The State Fire Marshal's Report Is Admissible Pursuant To FRE 803(8)(C).

Plaintiff will introduce the "Fire Investigation Summary Report" on Case No. 2002-117-2011, which was prepared by Sergeant Francis McGinn of the Fire and Explosion Investigation Unit of the Massachusetts State Police (a/k/a the State Fire Marshal's Office). Sergeant McGinn was the lead investigator from the State Fire Marshal's Office. The report is clearly admissible as "factual findings resulting from an investigation made pursuant to authority granted by law" within the meaning of Fed. R. Evid. 803(8)(C):

> Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), settled a long-standing conflict among the circuits regarding the admissibility, under Federal Rule of Evidence 803(8)(C), of accident reports containing investigators' conclusions and opinions. The Court held that "statements in the form of opinions or conclusions are not by that fact excluded from the scope of Federal Rule of Evidence 803(8)(C)." Id. at 175, 109

> S.Ct. at 453.  The test for admissibility is two-fold: "As long as the conclusion is [1] based on a factual investigation and [2] satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." Id. at 170, 109 S.Ct. at 450.

Lubanski v. Coleco Industries, Inc., 929 F.2d 42, 45 (1st Cir. 1991).  As Beech Aircraft and subsequent Circuit Court decisions make clear, such reports carry with them a presumption of trustworthiness and admissibility, with the burden on the opponent to admissibility to present sufficient "negative factors" to overcome the presumption.

There are no "trustworthiness" issues here, since the report is a contemporaneous, first-hand account of the investigation and findings of Sergeant. McGinn, a qualified fire investigator who was charged by law with making those findings.

In Green v. Philadelphia Gas Works, 333 F. Supp. 1398, 1405 (E.D. Pa. 1971), decided prior to the adoption of the Federal Rules of Evidence, the court explained the evidentiary value of public sector fire investigation reports in cases like this:

> The plaintiff also contends that the fire marshal's report should not have been sent out with the jury because it overemphasized the fire marshal's theory on the cause of the fire.  This report was the official report of this fire stating both the conclusion and the reasons for that conclusion.  The fire marshal was an independent, impartial witness who did not receive a fee for making his investigation from any party in this litigation.

333 F. Supp. at 1405.

    **B.**    **Plaintiff Will Use Appropriate Expert Methodology To Prove The Cause Of The Fire.**

Plaintiff's Memorandum in Opposition to Defendant Kemp's Motion in Limine to Exclude Testimony of Plaintiff's Expert Thomas Klem explained at length how it intends to prove that Mr. Kemp's plumber's torch caused the fire.  Plaintiff respectfully refers the Court to that Memorandum.

### C. Circumstantial Evidence That The Fire Was Caused By Defendant Kemp's Use Of A Torch Is Also Sufficient To Establish Kemp's Negligence.

There are many cases recognizing that a fire is not ordinarily started by a torch if the operator is exercising due care.

> Plaintiff's evidence, although circumstantial, was sufficient to establish Prima facie that the fire was caused by an acetylene torch. The evidence also establishes without contradiction that the acetylene torches were under the exclusive control of the defendant's employees, and that a fire is not ordinarily started by operation of an acetylene torch in the absence of negligence on the part of the operator. Where these necessary elements are present, the doctrine of Res ipsa loquitur is applicable. Real Estate Management Corp. v. Imperial Plumbing & Heating Co., 512 P.2d 1169, 1171 (Colo. App. 1973)

accord Gateway Chemical Co. v. Groves, 338 S.W.2d 83, 86 (Missouri 1960)("we think it is clear that . . . a fire is not ordinarily started by the operation of an acetylene torch if the operator in charge thereof uses due care"); Lincoln Property Co. v. Stasco Plumbing, Inc., 130 Ga. App. 767, 204 S.E.2d 449 (1974); O'Doherty v. Catonsville Plumbing & Heating Co., 262 Md. 646, 278 A.2d 557 (1971)(expert opinion that plumber "unsweating" or unsoldering joints over 22 hours prior to discovery of fire was the cause of the fire was sufficient to make out a prima facie case of negligence); Firemen's Mutual Insurance Co. v. Muskovitz & Pershin & Sons, Inc., 32 Mich. App. 566, 189 N.W.2d 85, 88 (1971)(upholding finding that plumber's "sweating" or soldering of pipes eight to twelve hours prior to fire's discovery caused the fire, noting that "because plaintiff could produce no eyewitnesses who were present at the time the fire started and who observed the manner of operation of defendant's pipefitters and could testify to their negligence in their installation, the negligence of the pipefitters had to be established through circumstantial evidence"); Wilson v. Paul, 176 N.W.2d 807 (Iowa 1970)(court erred in refusing to give *res ipsa* instruction).

Thus, a jury finding that defendant Kemp's torch caused this fire would itself be sufficient to support an inference of negligence under the doctrine of *res ipsa loquitur*.

### D. The Evidence Establishing Defendant Kemp's Negligence Will Also Establish Defendant Sandborg's Breach Of The Implied Warranty Of Workmanlike Performance.

The Massachusetts Supreme Judicial Court has long recognized that a warranty of workmanlike performance is implied in every service contract. In Abrams v. Factory Mutual Liability Insurance Co., 298 Mass. 141, 143, 10 N.E.2d 82, 83 (1937), the Court explained "when a party binds himself by contract to do work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it." 298 Mass. at 143, 10 N.E.2d at 83. This warranty of workmanlike performance requires that "a contract for services be performed in a reasonably diligent, skillful, workmanlike and adequate manner." Previews, Inc. v. Everets, 326 Mass. 333, 335, 94 N.E.2d 267, 268 (1950). More specifically:

> "The standard of the skill required is the degree of skill, efficiency, and knowledge that is possessed by those of ordinary skill, competency, and standing in the particular trade or business for which the person is employed, and where the contract does not provide for a higher degree of skill, only ordinary skill and the degree of skill adequate to the performance of the undertaking is required. No breach will be found if the contractor performed the work in accordance with industry standards."

17A Am. Jur.2d Contracts §612 (2004). Under each of the authorities cited above, the failure to perform work in a workmanlike fashion will subject the contracting party to liability for damages resulting from such failure.

While it appears that no reported Massachusetts decision has directly addressed the issue, courts in other jurisdictions have recognized that the duty to perform in a workmanlike fashion, like all contractual duties, is non-delegable. For example, in National Fire Insurance Co. v. Westgate Construction Co., 227 F. Supp. 835, 837 (D. Del. 1964), the court noted that "it would be indefensible to permit the general contractor to shrug off his contractual duties . . . by arguing

that the negligence was not his but that of an independent subcontractor." Similarly, in W. H. Mills v Krauss, 114 So.2d 817, 820 (Fla. App. 1959) the court held that "the duty of a general contractor to use due care in repairing the premises of another . . . is a non-delegable duty which may not be committed to an independent contractor." The court in W. H. Mills further noted that it would be a "strange doctrine" to allow a contractor to avoid responsibility "by seeking refuge . . . behind the men they had employed and who caused the accident from which the damages resulted." 114 So.2d at 821.

In Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co., 201 Minn. 500, 503, 277 N.W. 226, 228 (1937), the court, in holding that a contractor was liable for damage to the plaintiff's subrogee's property caused by an independent subcontractor, stated "when one person owes another a contractual duty to act, the law imposes upon the person owing that duty the further duty of acting with due care in the performance of his contract so as not to injure the contractee's person or property. This duty is non-delegable . . . This is, the performance of the contract may be delegated to another, but this delegation does not relieve the contractor of the duty to act, or of his duty to act with due care. Consequently, defendant is subject to liability for damage suffered by the contractee as a result of the negligence of the independent subcontractor;" accord Brooks v. Hayes, 133 Wis.2d 228, 235-238, 395 N.W.2d 167, 170-171 (1986), White Pass Co. v. St. John, 71 Wash.2d 156, 427 P.2d 398, 401-402 (1967); Clear v. Patterson, 80 N.M. 654, 656-657, 459 P.2d 358, 360-361 (1969)(delegation of work to subcontractor did not relieve defendant prime contractor of contractual duty to plaintiff, when subcontractor performed work negligently);

In this case, defendants Kemp and Sandborg characterize themselves as a subcontractor and prime contractor, respectively, even though, at all relevant times, Mr. Kemp devoted essentially all of his working hours to Mr. Sandborg's plumbing projects. In any case, there is no dispute that Mr. Sandborg had contracted to perform the work that Mr. Kemp was performing in the Marino carriage house, and that Mr. Kemp was performing this work on Sandborg's behalf, at least ostensibly, as a "subcontractor," rather than an agent or employee. Based upon these

- 7 -

facts, a jury finding that defendant Kemp's negligence caused the fire would also necessarily establish that Mr. Sandborg breached his implied warranty of workmanlike performance, under the legal standards set forth above.  Indeed, plaintiff maintains that a finding that Kemp's negligence caused the fire would also be dispositive, as a matter of law, on the issue of defendant Sandborg's liability for breach of the implied warranty of workmanlike performance.

Respectfully submitted,

COZEN O'CONNOR

DATE: 3/30/07   BY:  /s/Daniel Q. Harrington
DANIEL Q. HARRINGTON
1900 Market Street
Philadelphia, PA  19103
215-665-2126
MATTHEW H. FEINBERG
FEINBERG & KAMHOLTZ
125 Summer Street, 6th Floor
Boston, MA  02110
617-526-0700
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of Plaintiff's Trial Brief was forwarded via electronic notification of filing on the 30th day of March, 2007, to the following:

Philip T. Tierney, Esquire
FINNEGAN, UNDERWOOD, RYAN & TIERNEY
22 Batterymarch Street
Boston, MA  02109

Christopher G. Betke, Esquire
RYAN, COUGHLIN & BETKE, LLP
175 Federal Street
Boston, MA  02110

      /s/ Daniel Q. Harrington
     DANIEL Q. HARRINGTON

PHILADELPHIA\3051533\1  132682.000

- 8 -